**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JERRA MCCREA LYLES,        :
                        :    Civil Action No. 06-2094 (RBK)
          Petitioner,   :
                        :
          v.             :    **OPINION**
                        :
CHARLES SAMUELS, JR.,WARDEN, :
                        :
          Respondent.   :

**APPEARANCES:**

    JERRA MCCREA LYLES, Petitioner pro se
    #36144-118
    FCI Fort Dix
    P.O. Box 7000
    Fort Dix, New Jersey 08640

    JOHN ANDREW RUYMANN, AUSA
    Office of the U.S. Attorney
    402 East State Street, Room 430
    Trenton, New Jersey 08608
    Counsel for Respondent

**KUGLER**, District Judge

    Petitioner Jerra McCrea Lyles ("Lyles"), a prisoner

currently confined at the Federal Correctional Institution at

Fort Dix, New Jersey, has submitted a petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2241.[1]  The respondent is
Charles Samuels, Jr., Warden at FCI Fort Dix.

For the reasons stated herein, the Petition will be denied.

I.  <u>BACKGROUND</u>

Petitioner is federal inmate presently serving a 40-year
term in prison imposed after the United States Parole Commission
("Commission") revoked his special parole term.  Lyles' statutory
release date is set for March 29, 2029.  (Declaration of
Respondent's counsel, John Andrew Ruymann, AUSA, ("Ruymann
Decl.") and the Commission Certificate at Exhibits 1, 2).[2]

Lyles was convicted in the United States District Court for
the District of Maryland in 1976 on a multi-count indictment
including charges of conspiracy to manufacture heroin,
distribution of heroin, possession with the intent to distribute
heroin, continuing criminal enterprise, and other federal drug-
related offenses.  On July 23, 1976, Lyles was sentenced to an

_____

[1] Section 2241 provides in relevant part:

(a) Writs of habeas corpus may be granted by the
Supreme Court, any justice thereof, the district courts
and any circuit judge within their respective
jurisdictions.
(c) The writ of habeas corpus shall not extend to a
prisoner unless-- ... (3) He is in custody in violation
of the Constitution or laws or treaties of the United
States ... .

[2]  Respondent, United States Parole Commission, submitted a
certified record with relevant exhibits numbering 1 through 16.
Accordingly, the certified record will be referred to as the
"Commission Certificate".

2

aggregate term of 30 years in prison with a special parole term of 80 years.[3] (Commission Certificate at Ex. 1).

On March 16, 1978, the sentencing court vacated Lyles' sentence as to Count 1,[4] with the proviso that the sentence would be reinstated if the conviction and sentence on Count 30 of the indictment was overturned.[5] (Petitioner's Memorandum at Ex. 3). On December 12, 1980, the sentencing court vacated the special parole term on Count 1, leaving petitioner with a single special parole term of 40 years. (Pet. Mem. at Ex. 4).

_____

[3] Lyles was convicted and sentenced on the following Counts: Count 1, conspiracy to manufacture heroin, in violation of 21 U.S.C. § 846 (15 years in prison and 40 years special parole); Count 2, distribution of heroin, in violation of 21 U.S.C. § 841 (15 years in prison and 40 years special parole consecutive to Count 1); Counts 3 and 4, distribution of heroin, in violation of 21 U.S.C. § 841 (15 years in prison and 40 years special parole, concurrent with Counts 1 and 2); Count 5, distribution of heroin and aiding and abetting, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2 (15 years in prison and 40 years special parole, concurrent with Counts 1 and 2); Counts 6 and 7, possession with intent to distribute heroin in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2 (15 years in prison and 40 years special parole, concurrent with Counts 1 and 2); Counts 8, 10-13, 15, 17-29, use of telephone for narcotics purposes in violation of 21 U.S.C. § 843 (4 years in prison concurrent with Counts 1 and 2); and Count 30, continuing criminal enterprise in violation of 21 U.S.C. § 848 (30 years in prison concurrent with Counts 1 and 2).

[4] Count 1 charged Lyles with conspiracy to manufacture heroin in violation of 21 U.S.C. § 846. Lyles had been sentenced originally to a term of 15 years in prison with a special parole term of 40 years on this count.

[5] Count 30 charged Lyles with a continuing criminal enterprise, in violation of 21 U.S.C. § 848. On this Count, Lyles was sentenced to 30 years in prison to run concurrent with the terms of imprisonment imposed on Counts 1 and 2.

On June 5, 1991, Lyles' conviction on Count 1 was vacated and the 15-year consecutive term of imprisonment was extinguished accordingly.  All other sentences on the remaining counts were ordered to continue as imposed, leaving petitioner with an aggregated 30-year prison term and a special parole term of 40 years.  (Pet. Mem. at Ex. 4; Commission Certificate at Exs. 1 and 2).

On November 7, 1993, Lyles was mandatorily released from the custody of the Bureau of Prisons ("BOP") on his aggregate 30 year prison term, but was ordered to remain "under the jurisdiction of the Commission, as if on parole ... until the expiration of the maximum term, or terms of the sentence, less 180 days on August 7, 2005." (Commission Certificate at Ex. 3).  On August 7, 2005, Lyles' special parole term of 40 years was to commence.  (Id.).

On March 2, 1998, the Commission considered Lyles for a grant of early termination from mandatory release supervision even though Lyles had not met the guidelines for early termination based on his use of cocaine in 1995.  However, the Commission found that termination of the mandatory release supervision was permitted because Lyles had a 40-year special parole term to follow.  Therefore, on March 3, 1998, the Commission sent petitioner a certificate of early termination, discharging Lyles from parole to begin service of his 40-year special parole term.  (Id. at Exs. 4, 5).  An amended certificate

was issued on February 17, 1999 to reflect that the early termination related to Lyles' mandatory release term rather than parole as mistakenly noted on the March 3, 1998 certificate. (<u>Id</u>. at Ex. 6).

On August 31, 2000, the Commission received notification from the U.S. Probation Office that Lyles had pled guilty on May 19, 2000, to a federal drug charge of conspiracy to possess with the intent to distribute cocaine.  On August 18, 2000, the United States District Court for the Southern District of California sentenced Lyles to a prison term of 30 months with one year supervised release.  (<u>Id</u>. at Ex. 7).

On April 12, 2001, the Commission issued a warrant charging Lyles with parole violations based on his 2000 federal drug conviction.  Lyles was charged with: (1) conspiracy to possess with intent to distribute cocaine and unlawful use of a communication facility; and (2) association with a "person having criminal record/engaged in criminal activity."  The warrant was lodged as a detainer against Lyles at FCI Fort Dix pending his completion of the 30-month prison term imposed by the U.S. District Court for the Southern District of California.  (<u>Id</u>. at Exs. 8, 9 and 10).

The warrant was executed by the BOP on May 21, 2002, and the Commission conducted a parole revocation hearing on August 8, 2002.  In a written decision issued on August 19, 2002, the

5

Commission revoked Lyles' special parole, forfeited all time
spent on special parole, and granted re-parole on January 8,
2011. (Id. at Ex.13).

On September 17, 2002, Lyles appealed the Commission's
decision, asserting that his special parole term should have
started in 1991 when he completed his 15-year prison term imposed
on Count Two.  He also claimed that the Commission was required
to conduct a termination hearing on November 7, 1998, after he
had been on supervision for five years.[6]  Lyles contended that an
"immediate cessation of the special parole term was warranted"
because the Commission failed to conduct the termination hearing.
(Id. at Ex. 14, p. 10).

On October 17, 2002, the National Appeals Board ("NAB")
affirmed the Commission's decision, rejecting Lyles' claims that
his special parole term began in 1991 or 1993, and that he was
entitled to termination of the special parole term in 1998.
Specifically, the NAB ruled:

---

[6]  Lyles alternatively claimed that his special parole term
began on November 7, 1993, when he was mandatorily released from
BOP custody on the 30-year prison term.  Lyles argued that,
pursuant to 18 U.S.C. § 4211(c)(1)(1976), the Commission was
required to terminate supervision after five years on parole, or
hold a hearing to determine whether continued supervision is
warranted because there is a likelihood that the parolee will
engage in criminal conduct.  Lyles argued that the five year
anniversary date was November 7, 1998, at which time parole
supervision should have terminated or a hearing should have been
held.

> Finally, you are mistaken in arguing that your special
> parole term began in 1993 upon the expiration of your
> fifteen year sentence.  Your fifteen year sentence did not
> expire separately from your thirty-year sentence because
> both sentences were aggregated into a single, thirty-year
> sentence.  You were mandatorily released from your aggregate
> thirty-year sentence on November 7, 1993, with supervision
> "as if on parole" from that mandatory release scheduled to
> expire on August 7, 2005.  A special parole term does not
> begin until parole or mandatory release supervision on the
> aggregate of the offender's sentences is concluded.  The
> Commission granted early termination of your mandatory
> release supervision period on March 3, 1998.  On that date,
> you began your 40-year special parole term, which the
> Commission has just now revoked.

(Id. at Ex. 15).

On January 25, 2001, Lyles filed a motion in the United

States District Court for the District of Maryland, asserting

that he is serving an illegal sentence because he has served the

originally imposed sentence in its totality, and that the 40-year

special parole term exceeded the statutory maximum sentenced

allowed for his conviction under 21 U.S.C. § 841 (b)(1)(A).

Lyles styled the motion under Rule 35 of the Federal Rules of

Criminal Procedure, but the district court recharacterized the

action as a fourth motion under 28 U.S.C. § 2255.  The court

ruled that the 40-year special parole term was authorized and

mandated based on petitioner's conviction on charges of § 841

violations, see United States v. Connolly, 618 F.2d 553, 555-56

(9th Cir. 1980)(district court has no discretion not to impose a

special parole term for § 841 violations), and that the sentence

was within the statutory limits for the substantive drug crimes

for which he was convicted.  (April 12, 2001 Memorandum Opinion, United States District Court for the District of Maryland, Commission Certificate at Ex. 16).

On or about October 20, 2004, Lyles filed a motion for an emergency hearing on a petition for a writ of habeas corpus under 28 U.S.C. § 2241 before this Court, in <u>Lyles v. Nash</u>, Civil No. 04-5146 (RBK).  The respondent filed an answer to the petition, to which Lyles objected.  On June 3, 2005, this Court issued an Order denying the motion for emergency relief on the ground that petitioner had not made the requisite showing of likelihood of success on the merits,[7] and the matter was terminated.

Lyles filed this action on or about May 8, 2006.  The Government responded to the petition on June 20, 2006.  Lyles filed objections on July 5, 2006 with an affidavit on July 25, 2006.  He also filed a response to the answer on September 29, 2006.

## II.  <u>CLAIMS PRESENTED</u>

Lyles seeks his release by way of this habeas petition on the ground that the sentence he is now serving exceeds the term of imprisonment authorized by statute.  The sentence at issue is the 40-year special parole term, which was revoked by the

---

[7] Lyles had filed an earlier application for an emergency hearing on his petition for habeas relief in <u>Lyles v. Bailey</u>, Civil No. 02-1203 (SMO), which motion was similarly denied by Order filed June 21, 2002.

Commission, thus subjecting petitioner to a 40-year term of imprisonment beyond the maximum imprisonment authorized by statute for a conviction based on violation of 21 U.S.C. § 841(a)(1).

Lyles further claims that his right to due process under the Fifth Amendment was violated by the Parole Commission when it commenced petitioner's 40-year special parole term more than six years after the 15-year term of imprisonment had expired for petitioner's conviction for violation of 21 U.S.C. § 841(a)(1). Lyles had been serving an aggregated prison term of 30 years, which included sentences based on his convictions for violations of federal statutes other than 21 U.S.C. § 841.[8]   He contends that the special parole term was imposed for his violation of § 841(a)(1) only.

In his third claim, Lyles argues that the Parole Commission violated his Fifth Amendment right to due process when it revoked the 40-year special parole term and administered a 40-year term of imprisonment.  He claims that the statutory jurisdiction of the Commission is limited to 21 U.S.C. § 841(c), for violation of special parole, and that any service of a term of imprisonment in excess of the statutory provision under 21 U.S.C. § 841(b)(1)(A) is not allowed.

---

[8]   For instance, Lyles was convicted and sentenced to 30 years in prison on Count 30, for continuing criminal enterprise, in violation of 21 U.S.C. § 848.

9

Finally, Lyles contends that his new sentence of 40 years in prison by revocation of the special parole term amounts to a non-statutory confinement in violation of the Eighth Amendment.

### III.   APPLICABLE LAW

At the time of Lyles' conviction in 1976, the statute establishing the penalties for petitioner's crimes stated, in pertinent part:

> [A]ny person who violates [21 U.S.C. § 841(a)] shall be sentenced as follows:
> (1)(A) In the case of a controlled substance in schedule I or II which is a narcotic drug, such person shall be sentenced to a term of imprisonment of not more than 15 years, a fine of not more than $25,000, or both. ...
> Any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a special parole term of at least 3 years in addition to such term of imprisonment ...

21 U.S.C. § 841(b)(1)(A).  For repeat offenders, the statute provided that the special parole term must last at least six years.  The statute did not set an upper limit on the special parole term.  See 21 U.S.C. § 841(b)(1)(B).  See also United States v. Garcia, 877 F.2d 23, 25-26 (9th Cir. 1989)(upholding a 25-year special parole term); United States v. Arellanes, 767 F.2d 1353, 1358-59 (9th Cir. 1985)(statute authorizing special parole term "as long as life" does not violate due process); United States v. Salas, 602 F.2d 215, 216 n.1 (9th Cir. 1979)("There is no limit on the maximum length of the special parole term.  That is apparently left entirely up to the discretion of the sentencing judge."); United States v. Rich, 518

10

F.2d 980, 987 (8th Cir. 1975)(noting that the statute apparently
authorized a special parole term for life), <u>cert</u>. <u>denied</u>, 427
U.S. 907 (1976).

The Special Parole Statute at issue here, 21 U.S.C. §
841(c), was part of a comprehensive drug control plan embodied in
the Controlled Substances Act of 1970.  Section 841(c) explains
the special parole term, as follows:

> A special parole term ... may be revoked if its terms and
> conditions are violated.  In such circumstances the original
> term of imprisonment shall be increased by the period of the
> special parole term and the resulting new term of
> imprisonment shall not be diminished by the time which was
> spent on special parole.  A person whose special parole term
> has been revoked may be required to serve all or part of the
> remainder of the new term of imprisonment.  A special parole
> term provided for in this section shall be in addition to,
> and not in lieu of, any other parole provided for by law.

21 U.S.C. § 841(c)(repealed).[9]

Thus, special parole is a statutory creation imposed in
addition to any term of years and is applied to offenders by a
sentencing court only pursuant to a specific grant from Congress.
<u>Fowler v. United States Parole Comm.</u>, 94 F.3d 835, 839 (3d Cir.
1996).  In <u>Fowler</u>, the Third Circuit noted three things that are
"special" about special parole.  First, special parole follows
the term of imprisonment, while regular parole entails release

---

[9]  This provision was repealed pursuant to the Comprehensive
Crime Control Act of 1984, but remains applicable to criminal
offenses committed, as here, before November 1, 1987.  <u>See</u> Pub.L.
No. 98-473, tit. II, § 224(a)(2), formerly § 224(a)(6), 98 Stat.
1987, 2030 (1984), as renumbered by Pub.L. No. 99-570, tit. I, §
1005(a)(2), 100 Stat. 3207, 3207-6 (1986).

before the end of the prison term.  Second, special parole is
imposed, and the length of its term is selected, by the district
judge rather than by the Parole Commission.  Third, when special
parole is revoked, its full length becomes a term of
imprisonment.  "Street time" does not count toward completion of
special parole if it is revoked.  Fowler, 94 F.3d at 840 (citing
Evans v. United States Parole Comm'n, 78 F.3d 262, 263 (7th Cir.
1996)); see also Bell v. United States, 521 F.2d 713, 715 (4th
Cir. 1975)("The mandatory special parole term imposed by the 1970
Act is unique.  It is in addition to any other parole, remaining
in effect after the original prison sentence has been served and
the period of regular parole has expired. ... Since the statute
prescribes no maximum special parole term, the additional prison
sentence may be lengthy."), cert. denied, 424 U.S. 918 (1976).

III.  ANALYSIS

A.  Special Parole Term Does Not Exceed Statutory Maximum

Lyles first argues that the 40-year special parole term he
is now serving exceeds the maximum term of imprisonment
authorized by the statute for which he was convicted, namely, 21
U.S.C. § 841(a)(1).  As set forth above, the penalties prescribed
by Congress for a conviction based on a violation of § 841(a)(1),
at the time of Lyles' conviction, mandated a maximum term of
imprisonment not to exceed 15 years, plus a special parole term.
21 U.S.C. § 841(b)(1)(A).  The statute did not set an upper limit

12

on a special parole term.  21 U.S.C. § 841(b)(1)(B).  Thus, a special parole term as long as life is apparently authorized under the statute.  See Arellanes, 767 F.2d at 1358-59; Salas, 602 F.2d at 216 n.1; Rich, 518 F.2d at 987.

This Court also notes that, in prior challenges to his 1976 conviction and sentence, petitioner's 40-year special parole term, as imposed on his convictions for violations of § 841(a)(1), was upheld by the sentencing court.  Pertinent here, the United States District Court for the District of Maryland, in a Memorandum Opinion denying Lyles' motion for reconsideration of the dismissal of a successive § 2255 motion, found:

> When petitioner was sentenced in 1976, a special parole term for violations of 21 U.S.C. § 841(a)(1), the substantive drug charges of which petitioner was convicted, was authorized by the statute.  While the statute mandated a special parole term of at least three years of first-time offenders, there was no upper limit on the length of the special parole term which could be imposed.  21 U.S.C. § 841(b)(1)(A); United States v. Garcia, 877 F.2d 23, 25 (9th Cir. 1989)(25 year special parole term authorized under the statute); United States v. Arellanes, 767 F.2d 1353, 1358-59 (9th Cir. 1985)(statute authorizing special parole term "as long as life" does not violate Due Process Clause).

(Commission Certificate, Ex. 16, pg. 3).

Thus, Lyles' current imprisonment based on the revocation of his 40-year special parole term, is an imprisonment contemplated by § 841(c) in addition to his statutory 15-year term under § 841(b)(1)(A), and does not violate due process or exceed any statutory maximum sentence.  See Bunker v. Wise, 550 F.2d 1155, 1159 (9th Cir. 1977)("there doe not appear to be an upper limit

13

to the term of special parole, nor the length of imprisonment following its violation"). This claim, therefore, is denied for lack of merit.

B.  Aggregation of Prison Terms

In his next argument, Lyles claims that his 40-year special parole term was imposed on those counts for which he was convicted of violating § 841(a)(1) only, and therefore, his special parole term should have started at the conclusion of his 15-year prison term imposed on those charges.  Instead, Lyles alleges that the BOP wrongfully aggregated his 15-year prison term with the 30-year concurrent sentences into a single 30-year prison term, which served to delay the start of his special parole term.  In short, Lyles contends that his special parole term should have begun on the day that his "unaggregated" federal sentence of 15 years expired in 1991.

The Government counters that the 30-year aggregated sentence was lawful, and that petitioner's claim has no basis in law.

Sentence aggregation is authorized under 28 C.F.R. § 2.5 for multiple sentences pursuant to 18 U.S.C. §§ 4161 and 4205.  "Such [multiple] sentences are treated as a single aggregate sentence for the purpose of every action taken by the Commission pursuant to these rules, and the prisoner has a single parole eligibility date as determined by the [BOP]."  28 C.F.R. § 2.5.  See e.g., Ronning v. United States, 547 F. Supp. 301, 305 (M.D. Pa.

14

1982)(concluding that inmate is confined for all offenses which comprise the aggregate sentence whether the component sentences have expired or not).  Therefore, the aggregation of Lyles' multiple sentences does not violate federal statutory or constitutional law.

The issue here, however, is when Lyles' special parole term was to commence.  A special parole term can only be served after completion of incarceration and any term of traditional parole. See Fowler, 94 F.3d at 840; Evans, 78 F.3d at 263; Mastrangelo v. United States Parole Com'n, 682 F.2d 402, 404 (2d Cir.)(noting mandatory special parole term "is designed to test the offender's ability to lead a lawful life in the community," and is thus in addition to, not par of or in lieu of, original sentence), cert. denied 459 U.S. 866 (1982).  Moreover, courts have consistently held that the Commission has the authority to order a special parole term to commence after the expiration of aggregated prison terms regardless of which sentence the special parole term was originally to follow.  Mastrangelo, 682 F.2d at 403-05 (upholding Commission decision to commence special parole term after the completion of two consecutive prison terms where the special parole term was imposed as part of the first prison term); Konipol v. Reno, 1993 WL 267287 at *2 (S.D.N.Y. July 12, 1993)("The Parole Commission acted within its statutory authority by beginning Petitioner's Special Parole term after the

completion of all other sentences" from two different districts);
see also United States Parole Com'n v. Viveros, 874 F.2d 699, 701
(9th Cir. 1989)(finding that Commission properly commenced a
special parole term after aggregated concurrent sentences,
including traditional parole, and not concurrent with traditional
parole, relying on § 841(c)); Helton v. U.S. Parole Commission,
1999 WL 184356 at *5-7 (S.D.N.Y. March 26, 1999)(acknowledging
the "well-established policy" to begin a special parole term
after the expiration of aggregated concurrent prison terms, where
the special parole term was imposed as part of the shorter of two
concurrent sentences); Smith v. Luther, 1986 WL 21284 at *3 n.3
(D. Conn. Feb. 21, 1986) ("a special parole term does not begin
to run until the completion of a second consecutive sentence").

The Second Circuit concluded that the Commission's policy on
commencing special parole terms is supported by "the nature and
purposes of the congressionally-mandated special parole term."
Mastrangelo, 682 F.2d at 404.  Specifically, the court explained:

> The mandatory special parole term is designed to test the
> offender's ability to lead a lawful life in the community.
> Special parole "is not part of an original sentence of
> imprisonment and it is in addition to, and not in lieu of,
> any other parole available to the prisoner." [DiSimone v.
> Norton, 404 F. Supp. 964, 966 (D.Conn. 1975); see also
> United States v. Mack, 494 F.2d 1204, 1207-08 n.3 (9th Cir.
> 1974), cert. denied, 421 U.S. 916 (1975)].  If the
> conditions of special parole are violated, the parolee is
> returned to prison to serve the entire special term, not
> merely that portion which remained at the time of the
> violation.  This provides an additional incentive for the
> parolee to lead a lawful life in the community for an
> extended period of time, hopefully creating habits conducive

16

> to continuing lawful ways after expiration of the [prison] term.  To permit the special parole term to run concurrently with an ordinary term of imprisonment would undermine this process.

Mastrangelo, 682 F.2d at 404-05.

Here, it is clear that the nature and purposes of special parole would have been undermined had Lyles' special parole term commenced in 1991, at the expiration of the shorter concurrent 15 year terms on the § 841(a)(1) violations because Lyles was still incarcerated on the aggregated 30-year prison term on the related § 848 violation.

It appears that Lyles may be attempting to circumvent this obvious conclusion by alternatively arguing that his special parole term should have started when he was released on regular parole or mandatory release supervision in 1993 because his 15 year prison terms had fully expired by the time he was mandatorily released from prison in November 1993.  This argument, however, is contradicted by the plain language of § 841(c), which expressly mandates that any term of special parole "shall be in addition to, and not in lieu of, any other parole provided for by law."  21 U.S.C. § 841(c)(1982 ed.)(repealed 1984); see also Mastrangelo, 682 F.2d at 404; Bunker v. Wise, 550 F.2d 1155, 1158 (9th Cir. 1977)(special parole term "takes effect after the expiration of normal parole or after mandatory release"); Roberts v. United States, 491 F.2d 1236, 1238 (3d Cir. 1974)(special parole term "is designed to

17

take effect upon the expiration of the period of parole supervision following mandatory release, or at the full term date following parole, or upon release from confinement following sentence expiration"); DiSimone, 404 F. Supp. at 966.

In Mastrangelo, the Second Circuit rejected petitioner's argument that the "intended effect" of special parole "might be preserved if the prisoner is released on regular parole from a term of imprisonment during some or all of the time that the special parole term is claimed to be running."  682 F.2d at 405. The Second Circuit reasoned that such an interpretation is not plausible because "it cannot be known at the time the second sentence is imposed that the prisoner's future behavior and the parole board's future decision concerning the prisoner's destiny will have led to his release on regular parole."  Thus, this Court rejects any argument posed by Lyles that he should have served his special parole term concurrently with his mandatory release supervision in 1993.

Accordingly, this Court finds that petitioner's sentences on his 1976 multi-count convictions were properly aggregated pursuant to 28 C.F.R. § 2.5, for purposes of computing Lyles' good time credits, parole eligibility, and mandatory release date, resulting in a single, aggregate 30-year prison term with a mandatory release date on November 7, 1993.  Consequently, Lyles was mandatorily released from prison on November 7, 1993, and

18

remained on mandatory supervised release or regular parole until March 3, 1998, when the Commission issued Lyles a certificate of early termination discharging Lyles from his mandatory release supervision to begin service of his 40-year special parole term. (Commission Certificate at Exs. 3-6).

Therefore, pursuant to 21 U.S.C. § 841(c), Lyles' special parole term being in addition to his term of imprisonment, would have commenced upon completion of his prison term and any other parole consequences of his prison term, in this case, no earlier than March 3, 1998, when his mandatory release term was discharged. See Roberts, 491 F.2d at 1238. In other words, Lyles' special parole term did not begin until the Commission granted him early termination of his mandatory supervised release to serve his special parole term on March 3, 1998. The Court concludes that Lyles' arguments otherwise are clearly without merit, and this claim will be denied accordingly.[10]

_____

[10] Lyles also contends that his special parole term would have been terminated in 1996 (assuming it began in 1991), or alternatively, in 1998 (because he was released on mandatory supervision in 1993), pursuant to 18 U.S.C. § 4211(c), which requires the Commission to make a determination of eligibility for early discharge after five years on parole. The record shows that petitioner did receive an early termination of his mandatory release supervision in March 1998, before five years had expired (Lyles had been release under mandatory supervision on November 7, 1993). Moreover, this early termination applied to his mandatory release supervision only, as expressly stated in the certificate of discharge, and not the special parole term, which only commenced On March 3, 1998 when his mandatory supervision term was discharged. Consequently, petitioner's claim in this regard is completely devoid of merit.

C.  Revocation of Special Parole and Imposition of Prison Term
    Was Authorized by Statute

     Lyles next argues that the Commission violated due process
by revoking his special parole term and imposing a term of
imprisonment in excess of that authorized under 21 U.S.C. §
841(b)(1)(A).  Respondent contends that this claim has no
merit.[11]

     Lyles' argument presumes that a special parole term is the
equivalent of a sentence of confinement.  However, special parole
is unique because its term is intended to be served outside
prison, a freedom that plainly differentiates it from a term of
confinement.  The fact and length of a sentence of confinement
rests solely within the discretion of the sentencing court,
whereas the special parolee's return to prison depends on his
conduct while serving his special parole.  In other words,
whether a petitioner will have to serve the special parole term
in prison is wholly speculative and is determined solely by his
actions during special parole supervision, i.e., only if he
violates the terms of his special parole supervision.  See United
States v. Walden, 578 F.2d 966, 972 (3d Cir. 1978), cert. denied,
444 U.S. 849 (1979).  In short, the special parole term of

_____

     [11]  The Court finds that Lyles is challenging a revocation
of special parole decision, which may be brought in a § 2241
habeas petition, and rejects respondent's argument that this
claim may only be presented in a § 2255 motion.

                              20

imprisonment lies dormant unless and until there is a revocation of parole.

As explained earlier in this Opinion, special parole is a statutory creation imposed in addition to any term of years and is applied to offenders by a sentencing court only pursuant to a specific grant from Congress. Fowler, 94 F.3d at 839. When special parole is revoked, its full length becomes a term of imprisonment. "Street time" does not count toward completion of special parole if it is revoked. Fowler, 94 F.3d at 840.

Section 841(c) explains the special parole term, as follows:

> A special parole term ... may be revoked if its terms and conditions are violated. In such circumstances the original term of imprisonment shall be *increased* by the period of the special parole term and the resulting new term of imprisonment shall not be diminished by the time which was spent on special parole. A person whose special parole term has been revoked may be required to serve all or part of the remainder of the new term of imprisonment. A special parole term provided for in this section shall be in addition to, and not in lieu of, any other parole provided for by law.

21 U.S.C. § 841(c)(emphasis added). Thus, the Commission's authority to revoke special parole is statutorily granted under § 841(c), and such revocation of special parole subjects the offender to re-imprisonment for the entire special parole term, without credit for "street time".

Moreover, because 21 U.S.C. § 841(b)(1)(B) does not specify a maximum special parole term, a lifetime special parole term is apparently authorized under the statute. See Arellanes, 767 F.2d at 1358-59; Salas, 602 F.2d at 216 n.1; Rich, 518 F.2d at 987.

21

See also United States v. Bridges, 760 F.2d 151, 153 (7th Cir. 1985 (finding that a lifetime special parole term is authorized under § 841(b)(1)(B)).

Therefore, this Court finds petitioner's argument, that his 40-year prison term based on the revocation of special parole exceeds statutory limits and violates due process, wholly without merit.

D.   Special Parole Does Not Violate the Eighth Amendment

Finally, Lyles contends that his non-statutory confinement violates the Eighth Amendment.   This claim is completely lacking in merit.   Lyles' 40-year special parole term and subsequent 40-year imprisonment for violation of special parole is contemplated by § 841(c).   Moreover, courts expressly have held that a special parole term does not violate the Eighth Amendment's guarantee of freedom from cruel and unusual punishment.   See Walden, 578 F.2d at 972; see also Garcia v. United States, 769 F.2d 697, 699 (11th Cir. 1985); Bridges, 760 F.2d at 154; United States v. Compton, 704 F.2d 739, 742 (5th Cir. 1983); United States v. Dazzo, 672 F.2d 284 (2d Cir.), cert. denied, 459 U.S. 836 (1982); United States v. Kuck, 573 F.2d 25, 27-28 (10th Cir. 1978); United States v. Rea, 532 F.2d 147, 149 (9th Cir.), cert. denied, 429 U.S. 837 (1976); United States v. Rivera-Marquez, 519 F.2d 1227, 1228 (9th Cir. 1975); United States v. Rich, 518 F.2d 980, 986 (8th Cir. 1975), cert. denied, 427 U.S. 907 (1976); United States

<u>v. Scales</u>, 464 F.2d 371, 376 (6th Cir. 1972); <u>Battle v. U.S.</u>
<u>Parole Commission</u>, 674 F. Supp 1274, 1276 (E.D. Tex. 1986).
Therefore, this claim will be denied.

IV.   <u>CONCLUSION</u>

For the reasons set forth above, the Petition will be denied
in its entirety for lack of merit.   An appropriate order follows.

S/Robert B. Kugler
Robert B. Kugler
United States District Judge

Dated: February 1, 2007

23